399 So.2d 996 (1981)
M.J., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. SS-120.
District Court of Appeal of Florida, First District.
May 18, 1981.
Rehearing Denied July 1, 1981.
*997 Theodore E. Mack, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
THOMPSON, Judge.
The appellant was charged with possessing more than five grams of cannabis, and he was later adjudicated delinquent. He appeals on the ground that his motion to suppress was improperly denied. We agree and reverse.
In October 1978, three students at a Quincy high school told Douglass Black, the assistant principal, that they had seen the appellant with a bag of cannabis in his underwear. Mr. Black called the police and Officer York came to Mr. Black's office at the school. The appellant was then called to Mr. Black's office.
Mr. Black asked the appellant several times about possessing cannabis, and he denied such possession. Mr. Black, along with Officer York, continued questioning the appellant for ten minutes. During this time, demands were made for the appellant to produce any cannabis that he had. Additionally, Mr. Black and Officer York told the appellant that he would be "taken down" and arrested, and that the appellant's uncle, a police officer, would be called. The appellant said, "Don't call my uncle," and at or about the same time, he indicated that Mr. Black could search him. Immediately thereafter, the appellant produced a cannabis cigarette from his coat pocket.
Mr. Black accused the appellant of having more cannabis, which the defendant denied. Officer York said that he would call the appellant's uncle and meet him at the police station. The appellant protested. Officer York also said that a search could be conducted. Mr. Black told the appellant to pull down his trousers, and the appellant did so. Mr. Black then told him to "go further," and the appellant pulled a bag of cannabis from his underwear. During this time, Officer York strongly suggested that the appellant turn over the cannabis.
The appellant subsequently filed a motion to suppress the cannabis. The trial court denied this motion, finding that the appellant intelligently and voluntarily consented to producing the cannabis cigarette. The court also found that even without consent, there was a reasonable suspicion to justify a warrantless search, and thus, all of the cannabis was properly admissible as evidence.
The appellant first contends that the trial court erred by finding voluntary consent to the search which produced the cannabis cigarette. In response, the State argues that no search was involved because, as the trial court properly found based on the facts herein, the appellant voluntarily produced the cannabis. However, a demand to disclose or produce a concealed object is treated as a search. State v. Oliver, 368 So.2d 1331, 1335 (Fla. 3d DCA 1979), cert. dism. 383 So.2d 1200 (Fla. 1980). See also Hunt v. State, 371 So.2d 205 (Fla. 2d DCA 1979); Conner v. State, 349 So.2d 709 (Fla. 1st DCA 1977). Here, there was a demand to produce the cannabis before its actual production. Hence, there was a search.
Of course, if the appellant initiated or invited the search, he could not validly object to that search. See State v. Wise, 356 So.2d 920, 921 (Fla. 2d DCA 1978). In this respect, the State argues that just before the appellant produced the cannabis cigarette, he invited a search by indicating that Mr. Black could search him. Accepting this argument, however, still leaves the question open as to whether the appellant voluntarily "invited" or consented to the search herein. This question is appropriate because an invitation to search is essentially *998 the equivalent of consenting to a search. See Jones v. State, 313 So.2d 105, 106 (Fla. 3d DCA 1975).
The appellant's invitation came after ten minutes of questioning and just before the cannabis cigarette was produced. Questioning continued while the appellant repeatedly denied possessing cannabis. He was threatened with arrest and with contacting his uncle, a police officer. In this coercive setting, demands were made for the production of cannabis. These factors clearly indicate a lack of voluntary action by the appellant, and instead, indicate that the appellant was merely acquiescing to apparent authority to conduct a search. See Hunt, 371 So.2d at 206; Sarga v. State, 322 So.2d 592, 593 (Fla. 1st DCA 1975).
The trial court also found that even without consent, there was a reasonable suspicion to justify a warrantless search for all of the cannabis. The appellant argues that the warrantless search in this case cannot be excused on the basis of a reasonable suspicion. The State in turn asserts that this court, in State v. F.W.E., 360 So.2d 148 (Fla. 1st DCA 1978), has adopted the reasonable suspicion exception for warrantless searches of students by school officials. This is true in certain circumstances. However, the issue here is how the reasonable suspicion exception for warrantless searches by school officials is affected by the presence of a police officer and his active participation in the search.
When a law enforcement officer directs, participates, or acquiesces in a search conducted by private parties, that search must comport with usual constitutional standards. See United States v. Mekjian, 505 F.2d 1320, 1327-28 (5th Cir.1975). See also Pomerantz v. State, 372 So.2d 104, 108-09 (Fla. 3d DCA 1979), cert. den. 386 So.2d 642 (Fla. 1980). Additionally, where a law enforcement officer directs, participates, or acquiesces in a search conducted by school officials, the officer must have probable cause for that search, even though the school officials acting alone are treated as state officials subject to a lesser constitutional standard for conducting searches in light of the in loco parentis doctrine.[*]See Picha v. Wielgos, 410 F. Supp. 1214 (N.D.Ill. 1976).
In Picha, the court held that police officers must have probable cause to validly conduct a search of students in active conjunction with a school official. In Picha, just as in the present case, there was police involvement from the very beginning of the search for drugs, and
although the school officials continued to act under the color of their ... school authority, the matter became at least partly a quest for illegal items. As far as the police are concerned, such an investigation cannot come under the ambit of the state interest that dwells under the banner of `in loco parentis.'

Id. at 1220. Therefore, police participation in the search required that there be probable cause. Id. at 1221. See also Piazzola v. Watkins, 316 F. Supp. 624, 626 (M.D.Ala. 1970), aff'd 442 F.2d 284 (5th Cir.1971); Annot., 49 A.L.R.3d 978, 987-89 (1973).
In the case at bar, probable cause was required for Officer York's search of the appellant. Such cause was lacking. Before probable cause exists for a search based on an informant's tip, the reliability of both the informant and his information must be indicated. See Davis v. State, 346 So.2d 141 (Fla. 1st DCA 1977), cert. den. Fla., 353 So.2d 679. As to the latter, the police must indicate that either the informant has perceived the fact asserted, or that although his information is hearsay, there is good reason for his believing it. Andersen v. State, 274 So.2d 228 (Fla. 1973), cert. den. 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124. Here, the record does not show that Officer York indicated or knew that Mr. Black saw the cannabis or had *999 good reason to believe that the appellant had it. The only information relayed by Mr. Black to Officer York was that a student had "some marijuana on his person." This statement, without any elaboration, cannot be the basis for probable cause on the part of Officer York.
There was no probable cause for the police search which produced the cannabis cigarette. That search was unlawful, and the bag of cannabis was procured as a direct result of the search. Thus, both items of cannabis should have been suppressed. Accordingly, the trial court's adjudication of delinquency is reversed, and this cause is remanded for proceedings consistent with this opinion.
MILLS, C.J., and McCORD, J., concur.
NOTES
[*] Obviously, this court in F.W.E. treated school officials in the same manner. If the school officials in F.W.E. and in Nelson v. State, 319 So.2d 154 (Fla. 2d DCA 1975) had been treated as private parties, there would have been no need to create a constitutionally based reasonable suspicion standard for school searches. Purely private searches are not subject to any Fourth Amendment considerations. See Pomerantz, 372 So.2d at 108.