[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 12, 2007
THOMAS K. KAHN
CLERK

No. 06-15397
Non-Argument Calendar

_____

D. C. Docket No. 06-60764-CV-WPD

JOSEPH C. MAGNOTTI,

                                                          Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT
OF CORRECTIONS,

                                                          Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 12, 2007)**

Before DUBINA, CARNES and FAY, Circuit Judges.

PER CURIAM:

Joseph C. Magnotti, a Florida prisoner serving a 25-year sentence for robbery, appeals pro se the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-32, 110 Stat. 1214 (1996), governs this appeal because Magnotti filed his § 2254 petition after the effective date of the AEDPA. The district court granted a certificate of appealability ("COA") as to the following two issues: (1) whether sufficient evidence supported Magnotti's conviction; and (2) whether Magnotti received ineffective assistance of his trial counsel. For the reasons set forth more fully below, we affirm.

Magnotti filed a 28 U.S.C. § 2254 petition in the district court alleging that the evidence was insufficient to support his conviction and that he received ineffective assistance of his trial counsel.[1] With regard to his ineffective-assistance-of-counsel claim, Magnotti asserted that his trial counsel was ineffective for failing to request jury instructions on the lesser included offenses of theft and attempted robbery, and for requesting instructions on the lesser included offense of robbery by sudden snatching, where the evidence supporting the robbery charge

---

[1]Magnotti raised two separate claims of ineffective assistance of trial counsel: (1) counsel failed to request jury instructions on lesser included offenses; and (2) counsel failed to object to the prosecutor's improper arguments. The district court granted a COA only as to Magnotti's argument that his counsel was ineffective for failing to request jury instructions on lesser included offenses. Accordingly, Magnotti's remaining claim of ineffective assistance is not presently before this Court.

was not overwhelming. The state opposed Magnotti's § 2254 petition and attached relevant portions of the state court record, which set forth the following procedural and factual history.

At Magnotti's trial, Sally Wood testified as the state's first witness. Wood testified that, on July 13, 2001, she had been working as a bank teller for approximately one and one half months. As part of her training for her bank teller job, she was instructed that, if the bank was robbed, she should do exactly what the robber asked and, after the robbery was over, she should write down all the details and not talk to anyone. At approximately 3:30 on a busy Friday afternoon at the bank, Wood called the next customer in line to her window. Magnotti walked up to Wood's window and said, "[t]his is a hold-up, I want your hundreds, fifties and twenties, now." Magnotti did not display a weapon. Wood began to put money up on her counter and she felt "[e]xtremely upset, nervous, afraid." Wood stated that, because there was a very thick wall between herself and Magnotti, she knew that he could not get to her, but that she "was deathly afraid." Wood then gave Magnotti the money and he left the bank. Wood next went to the back room of the bank and wrote down her description of Magnotti.

On cross-examination, Wood testified that she did not think any person could get to her through the glass that separated her from the customers and that

3

Magnotti did not yell or make any threats. She further stated that she "was not in fear of death, but [she] was deathly scared, the mere fact of somebody coming up and demanding money." Wood stated that she knew she could not be hurt because of the wall between her and Magnotti. On re-direct, Wood testified that she did not see a weapon, but that she had no idea whether Magnotti had a weapon or not. She further stated that she was scared to death and she was in fear.

Magnotti elected not to testify in his own defense, nor did he provide any defense witnesses. Magnotti moved for judgment of acquittal, arguing that the evidence did not support the charge of robbery. The district court denied the motion. Magnotti's counsel then requested that the court instruct the jury on the lesser included offense of robbery by sudden snatching, but declined to request instructions on any other lesser included offenses. The trial court next gave the jury charge, instructing the jury that, if it found that the state had not proved the elements of robbery beyond a reasonable doubt, that it would have to decide if the state proved the elements of the lesser included offense of robbery by sudden snatching. The jury found Magnotti guilty of robbery as charged in the information. Thereafter, the trial court sentenced Magnotti to 25 years' imprisonment.

Magnotti appealed his conviction and sentence to the Fourth District Court

of Appeal of Florida, arguing that the trial court had erred in denying his motions for acquittal and a new trial on the grounds that the evidence presented at trial did not establish beyond a reasonable doubt that Wood would have been in fear of great bodily injury or death, as was required by the robbery statute. The state appellate court affirmed Magnotti's conviction and sentence. In so doing, the state court cited Florida's robbery statute, Fla. Stat. § 812.13(1). The court found that the "fear" contemplated by the robbery statute would be established "if the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person," regardless of the actual state of mind of the victim. The court then concluded that, in Magnotti's case, the victim testified that she was afraid and, moreover, the circumstances were such that the jury could conclude that the victim would have had fear of death or great bodily harm because:
(1) Magnotti's use of the phrase "hold-up" connoted a forcible robbery; (2) an ordinary person in Wood's place would have feared that Magnotti had a weapon that he would have used to get the money; and (3) the glass between Magnotti and Wood would not have sufficed to remove the fear of an ordinary person in Wood's position. The court thereafter denied Magnotti's motion for rehearing and mandate issued on May 23, 2003. On September 5, 2003, the Florida Supreme Court declined to exercise its discretionary jurisdiction.

5

Magnotti then petitioned for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, arguing, among other things, that his trial counsel was ineffective for requesting the jury instruction on robbery by sudden snatching and for failing to request jury instructions on the lesser included offense of petit theft. The state responded that Magnotti had not demonstrated that he suffered prejudice, as required under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because the evidence overwhelmingly established that Magnotti committed robbery and, further, that there was no reasonable probability that the jury would have convicted him of a lesser offense. The state court denied Magnotti's Rule 3.850 motion for the reasons indicated in the state's response. Magnotti appealed the denial of his Rule 3.850 motion to the state appellate court, and the court denied the motion without opinion. After the state appellate court denied Magnotti's motions for certification and rehearing, mandate issued on March 10, 2006.

Based upon the above-detailed record, the district court denied Magnotti's § 2254 petition. Magnotti moved for a COA, which the district court granted on these two issues only: (1) whether there was sufficient evidence to support Magnotti's robbery conviction; and (2) whether Magnotti's counsel was ineffective for failing to request jury instructions on lesser included offenses.

6

We review a district court's grant or denial of a § 2254 petition de novo, while the court's factual findings are reviewed for clear error. See Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998). Mixed questions of law and fact, including ineffective assistance of counsel claims, are reviewed de novo. Id.

As amended by the AEDPA, 28 U.S.C. § 2254(d) forbids federal courts from granting habeas relief on claims that were previously adjudicated in state court, unless the adjudication was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." Id. "An unreasonable application may also occur if a state court unreasonably extends, or

7

unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id.

Moreover, a state court's factual findings are presumed correct, and the petitioner can rebut them only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). As such, for a state court's adjudication to result in an unreasonable determination of the facts in light of the evidence presented, "[n]ot only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence." Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005), cert. denied, 127 S.Ct. 427 (2006).

## A. Sufficiency of the Evidence

Magnotti argues on appeal that, pursuant to the Florida robbery statute and case law cited by the state appellate court, the state had to prove that Wood had fear of death or great bodily harm from his actions. Magnotti maintains that a finding that a reasonable person would have been objectively afraid is unsupported by the evidence because: (1) Wood testified that she was not in fear of death or bodily harm; (2) there was a secure barrier between Wood and Magnotti; (3) the bank's procedures required Wood not to resist Magnotti's demands; (4) Magnotti did not have a weapon; and (5) Magnotti did not make any threats or loud, sudden movements. He further argues that even a subjective fear of death or bodily injury

8

was not present in his case in light of Wood's testimony. He also asserts that the state court's reliance on certain state precedent was contrary to established Supreme Court precedent.

In Jackson v. Virginia, the Supreme Court held that, when reviewing the sufficiency of the evidence, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2788-89 (emphasis in original). The Supreme Court noted that it is the duty of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," and a reviewing court may not substitute its judgment as to whether it believes the evidence to be sufficient to sustain a conviction. Id.

In Florida, the offense of robbery is defined as:

the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Fla. Stat. § 812.13(1).

Here, to the extent that Magnotti argues that the sufficiency-of-the-evidence standard used by the state appellate court was contrary to, or an unreasonable

9

application of, clearly established federal law, his argument is without merit. It is noteworthy that the state court did not cite Jackson in reviewing Magnotti's sufficiency-of-the-evidence challenge. Nonetheless, Magnotti does not point out any part of the state court's decision that was contrary to Jackson, and the record establishes that the state court considered the evidence in the light most favorable to the state, cited the relevant state law, and did not re-weigh the evidence. See Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2788-89; see also Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (holding that a state court does not have to cite to Supreme Court "cases–indeed, [§2254(d)] does not even require awareness of [its] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them").

As to the question of whether there was sufficient evidence to support the "putting in fear" element of Magnotti's robbery conviction, the state court determined that its precedent required a showing that the robbery would have "ordinarily induced fear in the mind of a reasonable person." See State v. Baldwin, 709 So.2d 636, 637 (Fla. Dist. Ct. App. 1998). According to Baldwin, the state does not have to prove that the defendant's conduct was itself threatening or forceful, but only that "the conduct would induce fear in the mind of a reasonable person notwithstanding that the conduct is not expressly threatening." Baldwin,

10

709 So.2d at 637-38. Magnotti does not contend that the Baldwin standard is not the proper standard for determining whether he put Wood in fear during the incident. Rather, he argues that the evidence established that Wood had no fear. The evidence presented at trial demonstrated that Magnotti walked into a bank, stated that it was a "hold-up," and demanded money. Moreover, Wood testified that she was "deathly afraid" during the robbery as she placed the money on the counter. Such evidence was sufficient to establish that Magnotti's conduct would have induced fear in the mind of a reasonable person, notwithstanding Magnotti's argument that his conduct was not expressly threatening. See Baldwin, 709 So.2d at 637-38. Thus, the state court's analysis was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Accordingly, the district court did not err in denying Magnotti's § 2254 petition as to his insufficiency-of-the-evidence claim.

## B. Assistance of Counsel

Magnotti argues that his counsel was deficient in requesting a jury instruction on the offense of robbery by sudden snatching because that offense was not actually a lesser included offense to robbery and, further, was not supported by the evidence from his trial. He further argues that, in light of the facts of his case, his counsel should have requested jury instructions on simple theft, grand theft,

and attempted robbery. Magnotti contends that his counsel's decision to not request instructions on other offenses was not entitled to deference because, as the district court noted, it was an inexplicable decision. He also asserts that he suffered prejudice as a result of his counsel's decisions because the evidence left the jury with nothing to debate as to his guilt on the robbery charge and, because his counsel did not request instructions on lesser included offenses, the jury had no alternative offense for which to convict him. Magnotti lastly argues that the state court and district court erred in denying his request for an evidentiary hearing on the issue of his counsel's ineffective assistance.

The Sixth Amendment provides that a criminal defendant shall have the right to "the assistance of counsel for his defense." U.S. Const. amend. VI. When a convicted defendant claims that his counsel's assistance was ineffective, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." Putman, 268 F.3d at 1243. Reviewing courts must be highly deferential in reviewing a counsel's performance, and must utilize the strong presumption that counsel's performance was reasonable. Chandler v.

12

United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc).  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Id. at 1315.  Under the prejudice prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

In Magnotti's case, the state court decision was not contrary to, or an unreasonable application of, clearly established federal law.  First, while the state court decision denying Magnotti's ineffective-assistance-of-counsel claim did not directly cite Strickland, the court nonetheless denied the claim for the reasons indicated in the state's response to Magnotti's Rule 3.850 motion, which explicitly relied upon Strickland.  Thus, the state court correctly identified Strickland as the controlling law and properly applied it to Magnotti's ineffective-assistance-of-counsel claim.  See Robinson v. Moore, 300 F.3d 1320, 1343 (11th Cir. 2002) (holding that, "[i]t is well established that the Supreme Court's decision in Strickland is the controlling legal authority to be applied to ineffective assistance of counsel claims") (quotation omitted).

Moreover, the state court did not unreasonably apply the law from Strickland to the facts of Magnotti's case. Here, the state court and the district court determined that Magnotti failed to establish that he suffered prejudice as a result of his counsel's decisions. As discussed in issue one above, the evidence presented at Magnotti's trial was sufficient to sustain a conviction for robbery. As such, even assuming without deciding that Magnotti's counsel was deficient in failing to request jury instructions on other lesser included offenses, that deficiency does not suggest that there was a reasonable probability that the outcome would have been different because the jury had sufficient evidence to find Magnotti guilty of the greater offense of robbery. See Strickland, 466 U.S. at 694-94, 104 S.Ct. at 2068 (explaining that a reviewing court should presume that the jury acted according to law). Therefore, Magnotti's argument, that the jury would have convicted him of a lesser offense had it been given the instructions on such an offense, is not conclusive where the jury properly convicted him of robbery based upon the evidence presented at trial. Furthermore, the jury would have performed its duties in violation of the law had it convicted Magnotti of a lesser offense in the face of sufficient evidence for the greater offense. See id. (holding that "[a] defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed

14

on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency"). Similarly, Magnotti's counsel's request for instructions on the lesser offense of robbery by sudden snatching did not prejudice Magnotti because the jury found Magnotti guilty of robbery based upon sufficient evidence in the record. Accordingly, the district court properly denied Magnotti's § 2254 petition as to his ineffective-assistance-of-counsel claim because he failed to show that he suffered prejudice as a result of his counsel's decisions.

Magnotti has not met his burden under 28 U.S.C. § 2254(d). In light of the foregoing, the district court's denial of Magnotti's § 2254 petition is

**AFFIRMED.**