[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16590

_____

D.C. Docket No. 0:10-cr-60037-CMA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

MICHAEL LEE,

Defendant - Appellee.

_____

No. 16-16591

_____

D.C. Docket Nos. 0:16-cv-61460-CMA,
0:10-cr-60037-CMA-1

MICHAEL LEE,

Petitioner - Appellee,

versus

UNITED STATES OF AMERICA,

Respondent - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 2, 2018)

Before MARTIN, JORDAN, and GINSBURG,[*] Circuit Judges.

PER CURIAM:

The Armed Career Criminal Act, 18 U.S.C. § 924(e), imposes a 15-year minimum sentence on a defendant who is convicted of violating 18 U.S.C. § 922(g) (possession of a firearm by a convicted felon) and has three prior convictions for a "violent felony" or "serious drug offense." The ACCA defines a "violent felony" as any crime punishable by imprisonment greater than one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [elements clause]; or

> (ii) is burglary, arson, or extortion, involves use of explosives [enumerated clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [residual clause].

§ 924(e)(2)(B). In 2015, the Supreme Court held that the ACCA's residual clause was unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. 2551, 2557-

_____

[*]Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

2

60 (2015). The following year, the Court held that *Johnson* applied retroactively on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

Michael Lee was convicted in 2010 of being a felon in possession of a firearm and sentenced to 15 years in prison under the ACCA. In June of 2016, Mr. Lee filed a motion to vacate his criminal sentence under 28 U.S.C. § 2255 in light of *Johnson* and *Welch*. Mr. Lee argued that, because the residual clause could not be used to characterize a prior conviction as a violent felony, he no longer had three predicate violent felony or serious drug offense convictions. As a result, he did not qualify as an armed career criminal, and he could not be subject to an ACCA-enhanced sentence.

In August of 2016, the district court granted Mr. Lee's motion and vacated his 15-year sentence, and on October 5, 2016, it re-sentenced Mr. Lee to 85 months in prison. The government appealed, arguing that Mr. Lee's prior convictions still qualify as ACCA violent felonies.

## I

Prior to his federal conviction in 2010, Mr. Lee had three convictions for Florida robbery (two in 1988 and one in 1999) and one conviction for the sale, purchase, or delivery of cocaine. In order for Mr. Lee to qualify as an armed career

criminal, then, at least two of his Florida robbery convictions must qualify as violent felonies.[1]

Because the ACCA's residual clause is no longer valid, and robbery is not an enumerated offense, Florida robbery must qualify under the ACCA's "elements clause" in order for it to be a violent felony. That, in turn, requires Florida robbery to have "the use, attempted use, or threatened use of physical force" as an element of the crime. *See* § 924(e)(2)(B)(i). Mr. Lee argues that (1) Florida robbery does not satisfy this test, and, therefore, is never a violent felony; and (2) pre-1997 Florida robbery convictions do not satisfy this test, even if later ones do.[2]

The district court agreed with the second of these arguments. It concluded that at least two of Mr. Lee's Florida robbery convictions did not constitute violent felonies, and accordingly vacated Mr. Lee's ACCA-enhanced sentence.

**II**

---

[1] Because Florida strong-arm robbery, armed robbery, and attempted robbery are all treated the same for purposes of analyzing the ACCA's elements clause, we do not distinguish between them.

[2] Prior to 1997, Florida's intermediate appellate courts were divided on whether a snatching, as of a purse from a person's hand, or jewelry from a person's body, amounted to robbery or was simple theft. *See United States v. Welch*, 683 F.3d 1304, 1311-12 (11th Cir. 2012). In 1997, the Florida Supreme Court clarified that "in order for the snatching of property from another to amount to robbery, the perpetrator must employ more than the force necessary to remove the property from the person. Rather, there must be resistance by the victim that is overcome by the physical force of the offender." *Robinson v. State*, 692 So. 2d 883, 886 (Fla. 1997).

Unfortunately for Mr. Lee, both of his arguments are now foreclosed by our precedents, and we are therefore required to reverse the district court's vacatur of his 15-year ACCA sentence. Under our prior panel precedent rule, "the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court." *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).[3]

In 2006, we held, albeit in a single sentence unsupported by any legal analysis, that Florida robbery is "undeniably . . . a violent felony," and in so doing we cited to the ACCA's elements clause. *See United States v. Dowd*, 451 F.3d 1244, 1255 (11th Cir. 2006) (involving a 1974/pre-*Robinson* robbery conviction). In 2011, we held that Florida robbery qualified as a crime of violence under the elements clause of § 4B1.2(a)(1) of the Sentencing Guidelines. *See United States v. Lockley*, 632 F.3d 1238, 1245 (11th Cir. 2011). As in *Dowd*, our discussion of the elements clause in *Lockley* was brief and conclusory, and the panel did not analyze Florida case law. *See id*. at 1244 (stating "we can conceive of no means by which a

---

[3] It does not matter whether a prior case was wrongly decided, *see United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("a panel cannot overrule a prior one's holding even though convinced it is wrong"); whether it failed to consider certain critical issues or arguments, *see Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234 (11th Cir. 2006) ("a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the panel"); or whether it lacked adequate legal analysis to support its conclusions, *see Smith*, 236 F.3d at 1303 (stating that a prior panel decision cannot be avoided even if there are significant defects in legal reasoning or analysis).

5

defendant could cause such fear absent a threat to the victim's person"). Unlike *Dowd*, *Lockley* involved a 2001/post-*Robinson* robbery conviction.[4]

Mr. Lee argues that *Dowd* is no longer good law. He contends that later Supreme Court cases have provided a detailed analytical framework for courts to use in determining whether a particular state conviction qualifies as a violent felony. *See Curtis Johnson v. United States*, 559 U.S. 133 (2010); *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013); *Descamps v. United States*, 133 S. Ct. 2276 (2013); *Mathis v. United States*, 136 S. Ct. 2243 (2016). Because *Dowd* pre-dated these cases, and because the panel in *Dowd* performed no legal analysis whatsoever, much less the analysis he says is commanded by the Supreme Court, Mr. Lee argues that the holding in *Dowd* has been abrogated. Mr. Lee also asserts that pre-*Robinson* convictions for Florida robbery do not qualify as violent felonies, which would mean, in his case, that *Lockley* does not bind us.

Mr. Lee's arguments have some force. *See, e.g., United States v. Seabrooks*, 839 F.3d 1326, 1346-52 (11th Cir. 2016) (Martin, J. concurring in the judgment). Were we free to evaluate them anew, we might well agree with him. But we have recently rejected both of Mr. Lee's arguments.

---

[4] We apply the same analytical framework to the ACCA as we do to the similar career offender provisions of the Sentencing Guidelines. *See United States v. Palomino Garcia*, 606 F.3d 1317, 1328 (11th Cir. 2010).

In October of 2016, two months after the district court vacated Mr. Lee's sentence (and subsequent to each of the Supreme Court cases cited by Mr. Lee), we held in *Seabrooks* that *Lockley* remained binding precedent, and that a post-*Robinson* conviction for Florida robbery remained a violent felony under the ACCA's elements clause. *See id*. at 1338. The *Seabrooks* panel disagreed about whether *Dowd* remained binding precedent, and about whether pre-*Robinson* Florida robbery convictions qualified as convictions for a violent felony. *See id*. at 1346 (Baldock, J. concurring in part and concurring in the judgment), and 1346-52 (Martin, J. concurring in the judgment).

One month later, however, we held that *Dowd* remained binding precedent, and that pre-*Robinson* Florida robbery convictions were predicate ACCA violent felonies. *See United States v. Fritts*, 841 F.3d 937, 940-44 (11th Cir. 2016). Thus, subsequent to the Supreme Court cases referenced by Mr. Lee, we have held that both *Dowd* and *Lockley* remain binding precedent. *See Seabrooks*, 839 F.3d at 1338; *Fritts*, 841 F.3d at 940-42. Both of Mr. Lee's arguments are therefore foreclosed.

## III

Given *Seabrooks* and *Fritts* – both of which were decided after the district court's ruling in this case – we are not free to evaluate the substantive correctness, or current viability, of *Dowd* and *Lockley*, and we remain bound to follow both of

7

them. We therefore vacate Mr. Lee's 85-month sentence and remand with instructions that the district court re-instate Mr. Lee's original 15-year sentence.

**VACATED AND REMANDED WITH INSTRUCTIONS.**

JORDAN, Circuit Judge, concurring:

For an offense to qualify as a "violent felony" under the ACCA's "elements clause," the least of the acts punished must have, as a necessary element, "the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(e)(2)(B)(i). In holding that Florida robbery is categorically a violent felony under the elements clause, the panel in *United States v. Dowd*, 451 F.3d 1244, 1255 (11th Cir. 2006), got it wrong. So did the panel in *United States v. Lockley*, 632 F.3d 1238, 1245 (11th Cir. 2011), which came to the same conclusion under the identical "elements clause" of the career offender provision of the Sentencing Guidelines. Both cases failed to conduct the analysis commanded by the Supreme Court, and did not consider or apply relevant Florida case law. Subsequent cases which followed *Dowd* and *Lockley*—such as *United States v. Seabrooks*, 839 F.3d 1326, 1340-41 (11th Cir. 2016), *United States v. Fritts*, 841 F.3d 937, 939-44 (11th Cir. 2016), and *United States v. Joyner*, 882 F.3d 1369, 1378-79 (11th Cir. 2018), among others—are likewise mistaken.

## I

In Florida, larceny becomes robbery "when in the course of the taking, there is the use of force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1). These four alternatives constitute different means by which one element of the crime of robbery may be satisfied; they do not constitute four alternative elements.

9

*See* Fla. Std. Jury Instr. (Crim.) 15.1 (identifying "Force, violence, assault, or putting in fear [ ] used in the course of the taking" as one of the "four elements" required to "prove the crime of Robbery"); *Thomas v. State*, 183 So. 2d 297, 299-300 (Fla. 3d DCA 1966) (stating that force, violence, assault, and putting in fear are "alternative ingredients of the offense conjunctively, and the charge should be sustained if either alternative ingredient is proven") (quoting *Montsdoca v. State*, 93 So. 157, 158 (Fla. 1922)). When analyzing such an indivisible statute under the ACCA's elements clause, *see Descamps v. United States*, 570 U.S. 254, 258 (2013), "we must presume that the conviction rested upon nothing more than the least of the acts criminalized." *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010) ("*Johnson I*")) (internal quotation marks omitted). We must then determine whether the least of those acts has, as a necessary element, "the use, attempted use, or threatened use of physical force." *See id.*

As we have explained, a crime is a violent felony under the elements clause "only if the statute, on its face requires . . . *without exception*, an element involving the use, attempted use, or threatened use of physical force against a person *for every charge* brought under the statute." *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014) (emphasis added). "[I]f the statute sweeps more broadly," *Descamps*, 570 U.S. at 261, then the offense is not a violent felony, regardless of

the particular facts underlying a given defendant's crime or conviction. *See id. See also Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) ("*Johnson II*"); *Moncrieffe*, 569 U.S. at 190.

Significantly, the "physical force" referenced in the ACCA's elements clause requires more than just a minimal amount of force. It must be "violent force – that is, force capable of causing physical pain or injury to another." *Johnson I*, 559 U.S. at 140. Stated differently, it requires "strong physical force," "force strong enough to constitute power," or a "substantial degree of force." *Id*. at 140, 142. Whatever descriptive phrase is used, the ACCA's elements clause requires a great deal more than just a minimal amount of force.

In applying these principles to a state offense, we must defer to the construction (and application) provided by that state's courts. The Supreme Court has made this clear, and so have we. *See Johnson I*, 559 U.S. at 138 ("We are . . . bound by the Florida [courts'] interpretation of state law, including [their] determination of the elements of [the statute of conviction]."); *United States v. Howard*, 742 F.3d 1334, 1346 (11th Cir. 2014) ("We are bound by state courts' determination and construction of the substantive elements of a state offense.") (internal quotation marks omitted).

**II**

11

In my view, *Dowd* and *Lockley*—and their progeny—are wrong for two separate, but equally weighty, reasons. First, no amount of physical force, much less substantial, violent force, is required to commit Florida robbery "by putting in fear." Second, robbery "by force" can be committed in Florida with a minimal amount of force – enough to overcome resistance by the victim, but not enough to satisfy the ACCA's elements clause.

## A

"Putting in fear" is the least of the four means by which a defendant can commit robbery in Florida. *See* § 812.13(1). "The fear contemplated by the statute is the fear of death or great bodily harm," *Magnotti v. State*, 842 So. 2d 963, 965 (Fla. 4th DCA 2003), and the element of "putting in fear" is viewed through the reactions of a reasonable victim. "The rule in this regard is that if the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to be in fear for the purpose of the robbery statute, and actual fear need not be proved." *Id*.

The question, then, is whether a reasonable victim can be put in this degree of fear under Florida law without the defendant committing, attempting to commit, or threatening to commit an act of substantial, violent physical force. The panel in *Lockley* answered this question affirmatively without analyzing Florida case law, saying that it could "conceive of no means by which a defendant could cause such

fear absent a threat to the victim's person," and adding that it is "inconceivable that any act which causes the victim to fear death or great bodily harm would not involve the use or threatened use of physical force." 632 F.3d at 1244-45.

This analysis is mistaken because it ignores how Florida courts have interpreted robbery "by putting in fear." Time and again, the Florida courts have held that no force or threatened force is required for robbery "by putting in fear." As explained in *State v. Baldwin*, 709 So. 2d 636, 637-38 (Fla. 2d DCA 1998): "[T]he test does not require conduct that is, itself, threatening or forceful. Rather, a jury may conclude that, in context, the conduct would induce fear in the mind of a reasonable person notwithstanding that the conduct is not expressly threatening." We recognized this very principle four years before *Lockley*, albeit in an unpublished opinion. *See Magnotti v. Sec. Dept. of Corr.*, 222 F. App'x 934, 938 (11th Cir. 2007) ("According to *Baldwin*, the state does not have to prove that the defendant's conduct was itself threatening or forceful, but only that the conduct would induce fear in the mind of a reasonable person notwithstanding that the conduct is not expressly threatening."). Far from announcing a new principle, *Baldwin* simply explained the precept which Florida courts had already been applying for decades.

The journey starts at least 50 years ago with *Flagler v. State*, 189 So. 2d 212 (Fla. 4th DCA 1966). The defendant in that case opened the passenger door of a

13

car stopped at a stop sign at night, got in, and sat down on the passenger's seat. Inside the car were a mother (the driver) and her child. *See id.* at 213. The defendant stayed in the car for a short time without saying or doing anything, then picked up the mother's purse, exited the car, and fled. Despite the lack of any violent, physical force—or even threatened force—the Fourth District affirmed the defendant's robbery conviction. It explained that, "[s]urely the circumstances here outlined abundantly meet the test" of whether "the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable [person]." *Id.* at 213-14. The Fourth District did not so much as mention any use, attempted use, or threatened use of force by the defendant.

The Florida Supreme Court affirmed the Fourth District's ruling, focusing only on the reasonableness of the victim's fear. *See Flagler v. State*, 198 So. 2d 313, 314 (Fla. 1967) ("The conclusion that [the mother] was indeed actually in fear when [the defendant] seized the pocketbook . . . is not to us strained."). Noticeably absent was any discussion concerning the use of force or violence, or the presence of threats. The Florida Supreme Court simply recognized that because the victim's fear "was generated when she saw a strange hand reaching for her purse," the robbery conviction should stand. *See id.*

In *E.Y. v. State*, 390 So. 2d 776 (Fla. 3d DCA 1980), an elderly woman was "confronted by the defendant and his companion on the sidewalk." *Id.* at 777. The

14

defendant "took [her] purse out of [her] hand" and then fled. *Id*. Even though the defendant did not exert any violent force against the victim or threaten her with harm, the Third District affirmed the "putting in fear" robbery conviction because the victim was "scared," "in a state of shock," and "intimidated" during the taking of her purse. *Id*. In so doing, the Third District compared the situation to that in *Flagler*. *See id*. at 777-78.

The First District weighed in on the subject in *Butler v. State*, 602 So. 2d 1303 (Fla. 1st DCA 1992). The defendant in that case walked into a dry-cleaning establishment carrying a pair of pants in one hand. *See id*. at 1304. The pants were folded over, and he had one hand inside them. The defendant directed two employees to open the cash register and give him the money, and they did as ordered. He then left. Although the employees assumed the defendant had a gun underneath the pants, they did not actually see him carrying a weapon, and in fact he was not armed. The defendant did not state that he had a weapon, did not threaten to use a weapon, and did not threaten any harm if the employees did not comply with his instructions. He simply demanded the money. The First District found the evidence insufficient to support a conviction for armed robbery, but sufficient to support a conviction for robbery "by putting in fear," even though the defendant never made any verbal or physical threats. *See id*. at 1306.

15

In *Baldwin*, quoted earlier, the Second District reversed the dismissal of a charge of robbery "by putting in fear" even though the defendant purportedly robbed a bank without any element of physical force. *See* 709 So. 2d at 637. The defendant allegedly walked into a bank wearing a hat and sunglasses, and handed the teller a note stating "money" or "your money." When the teller asked the defendant if he was kidding, he shook his head or said "no." The teller attempted to hand him some marked bills, but he again shook his head. The teller then handed the defendant a set of unmarked bills. He took the money and walked out of the bank. *See id*. The trial court dismissed the robbery charge against the defendant, and the state appealed.

The defendant in *Baldwin* did not use any force, brandish a weapon, utter verbal threats, or make any physical threats, and the Second District acknowledged that the "case did not involve the use of force, violence, or assault." *Id*. at 637-38. Yet, discussing and relying on *Flagler* and *Butler*, the Second District ruled that the robbery charge should not have been dismissed by the trial court because a jury could find, on the alleged facts, that the defendant's actions "would ordinarily place a reasonable person in fear." *See id*. at 638.

The Fifth District relied on *Baldwin* in *Woods v. State*, 769 So. 2d 501 (Fla. 5th DCA 2000), to affirm a "putting in fear" robbery conviction. In *Woods*, the defendant entered a store and asked the cashier to change his quarter. *See id*. at

16

502. After the cashier opened the cash register, the defendant demanded that she give him the money. He told her "not to look around, not to yell for help, to do as she was told, and to do it quickly." *Id*. The defendant did not threaten force against the cashier, did not commit any acts of physical force towards her, did not carry a weapon, and did not say or intimate that he was carrying a weapon. The cashier feared for her safety not because of any explicit threats, but because of "the tone of his voice and the look in his eyes." *Id*. The evidence was sufficient, said the Fifth District, because a reasonable person would have felt sufficiently threatened to accede to the defendant's demands. *See id.*

These cases, as well as numerous others, pre-date both *Dowd* and *Lockley*, and cover both the pre-*Robinson* and post-*Robinson* legal landscape. *See Robinson v. State*, 692 So. 2d 883 (Fla. 1997). They apply the principle described in *Baldwin* that robbery "by putting in fear" in Florida "does not require conduct that is, itself, threatening or forceful." *Baldwin*, 709 So. 2d at 637-38.

The *Lockley* panel stated that Florida robbery "involves an act causing the victim to fear death or great bodily harm." *Lockley*, 632 F.3d at 1244. That is true, because handing a note to a bank teller demanding money, for example, is "an act." But, as *Baldwin* and similar cases show, there is a big difference between *an act which places a reasonable victim in fear* and *an act of threatened, attempted, or actual substantial, violent force*; an act which causes fear is not necessarily one

17

that threatens or uses force. The panel in *Lockley* made no such distinctions, treating "an act" creating fear as automatically one involving violent force. *See id*. at 1244-45. As explained above, Florida robbery "by putting in fear" does not categorically require the use, attempted use, or threatened use of physical force (much less substantial, violent force), because such robbery can be accomplished without any force at all.

**B**

The Supreme Court has told us that, in terms of "physical force," the ACCA's elements clause demands substantial, violent force. *See Johnson I*, 559 U.S. at 138-43. Florida robbery also does not satisfy the ACCA's elements clause because robbery "by force," the first of the four methods by which larceny becomes robbery in Florida, can be committed with a minimal amount of force, "be it ever so little." *Santiago v. State*, 497 So. 2d 975, 976 (Fla. 4th DCA 1986).

Assuming that Florida law always required that there be resistance by the victim that is overcome by the physical force of the offender, *see Robinson*, 692 So. 2d at 886, it still never required threatened, attempted, or actual substantial, violent force. The Florida Supreme Court has never wavered from the principle it espoused nearly a century ago in *Montsdoca*, 93 So. at 159: "The degree of force used is immaterial. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance."  *See also*

18

*Martin v. State*, 129 So. 112, 114 (Fla. 1930) (quoting *Montsdoca*); *McCloud v. State*, 335 So. 2d 257, 258 (Fla. 1976) (citing *Montsdoca* and stating that "[a]ny degree of force suffices to convert larceny into a robbery"); *Bates v. State*, 465 So. 2d 490, 492 (Fla. 1985) (citing *McCloud*); *Robinson*, 692 So. 2d at 886 (discussing and following *McCloud*); *Johnson v. State*, 612 So. 2d 689, 690-91 (Fla. 1st DCA 1993) (quoting *Montsdoca*); *Benitez-Saldana v. State*, 67 So. 3d 320, 323 (Fla. 2d DCA 2011) (citing *Robinson* and quoting *McCloud*).

Indeed, "[t]he law does not require that the victim of robbery resist to any particular extent." Fla. Std. Jury Instr. (Crim.) 15.1. And "if the victim resists *in any degree* and this resistance is overcome by the physical force of the offender, the crime of robbery is complete." *Adams v. State*, 295 So. 2d 114, 116 (Fla. 2d DCA 1974) (emphasis added). *See also Mims v. State*, 342 So. 2d 116, 117 (Fla. 3d DCA 1977); *E.Y. v. State*, 390 So. 2d 776, 779 (Fla. 3d DCA 1980); *S.W. v. State*, 513 So. 2d 1088, 1091 (Fla. 3d DCA 1987); *Sanders v. State*, 769 So. 2d 506, 507 (Fla. 5th DCA 2000). Thus, given minimal resistance, Florida robbery can be committed with minimal force, far less than is required under the ACCA. Florida's cases consistently illustrate this principle.

In *Adams*, the defendant ran past a woman in an alley and snatched her purse. *See Adams*, 295 So. 2d at 115. But, in the Second District's view, even this marginal force, met by marginal resistance, sufficed to sustain the defendant's

robbery conviction. *See id*. at 116. The Florida Supreme Court later approved of *Adams* in *Robinson*, 692 So. 2d at 886.

In *Johnson*, the defendant approached a woman at a bus station. *See Johnson*, 612 So. 2d at 690. The woman was holding $240 in her closed right fist. The defendant reached across her shoulder, raked her hand, and grabbed the money, in the process tearing a scab off one of her fingers. Even though the injury was "slight," the First District affirmed the defendant's robbery conviction because the victim had resisted by keeping her fist closed, and the defendant had to use "sufficient force to remove the money." *See id*. at 690-91.

*Sanders*, a case similar to but with even less force than *Johnson*, involved a defendant who approached a man holding some cash in his hands. *See Sanders*, 769 So. 2d at 506. The defendant asked the man for some change to make a phone call, and in order to put his left hand into his pocket for the change, the man put the cash into his right hand. While the man was concentrating on the change, the defendant grabbed the cash from the man's right hand. The man testified that the defendant "opened [his] hand and he grabbed [the money] at the same time." *Id*. at 507. The Fifth District, in affirming the robbery conviction, explained that because the defendant "had to peel [the man's] fingers back in order to get the money," the man could have been viewed as resisting. *Id*. "The fact that he did not put up greater resistance does not transform [the defendant's] act into a simple theft." *Id*.

20

And in *Hayes v. State*, 780 So. 2d 918 (Fla. 1st DCA 2001), in the course of the robbery, the defendant "bumped [the victim] from behind with his shoulder and probably would have caused her to fall to the ground but for the fact that she was in between rows of cars." *Id*. at 919. The First District, without further discussion, affirmed the conviction because even this "bumping" was sufficient force under Florida law to constitute robbery "by force." *See id*.

These cases illustrate the oft-applied principle that robbery "by force" in Florida requires only some minimal quantum of force; the degree of the force is immaterial. In contrast, the degree of force is not immaterial under the ACCA's elements clause, which requires substantial, violent force. *See Johnson I*, 559 U.S. at 138-43.

Indeed, the Supreme Court has distinguished the "substantial degree of force" required for a violent felony under the ACCA's elements clause from "[m]inor uses of force [which] may not constitute 'violence' in the generic sense." *United States v. Castleman*, 134 S.Ct. 1405, 1411-12 (2014). In *Castleman*, the Court distinguished "relatively minor" acts of physical force—such as "pushing, grabbing, shoving, slapping, and hitting"—from other acts one might characterize as violent felonies under *Johnson I. See id.* at 1411-12 (internal quotation marks omitted). And, referring to a case it had cited with approval in *Johnson I*, the Court reiterated that it would be "hard to describe as violence a squeeze of the arm that

21

causes a bruise." *Id.* at 1412 (quoting *Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003)) (internal quotation marks omitted).

Under Florida law, as illustrated by the cases discussed above, "relatively minor" acts of physical force are enough to convict a defendant of robbery "by force." *Hayes* involved "pushing," while *Adams*, *Johnson*, and *Sanders* each involved "grabbing" or "squeezing." None, however, involved substantial, violent force.

There simply is no way of getting around the conflict between *Johnson I*, *Castleman*, and the Florida cases on the one hand, and *Dowd*, *Lockley*, and their progeny on the other. If we are going to follow the analytical road map the Supreme Court has drawn for us, Florida robbery cannot categorically qualify as a violent felony under the ACCA's elements clause because robbery "by force" can be committed with just a minimal amount of force, "be it ever so little." *Santiago*, 497 So. 2d at 976. Not surprisingly, the Ninth Circuit has recently rejected our conclusion in *Lockley* based on this very principle, holding that Florida robbery does not constitute an ACCA violent felony. *See United States v. Geozos*, 870 F.3d 890, 901 (9th Cir. 2017) ("[W]e think that the Eleventh Circuit, in focusing on the fact that Florida robbery requires a use of force sufficient to overcome the resistance of the victim, has overlooked the fact that, if the resistance is minimal,

then the force used to overcome that resistance is not necessarily violent force.")
(citing *Montsdoca*).

## III

When we wrongly decided in *Dowd*, and then *Lockley*, that Florida robbery is categorically a violent felony under the elements clauses of the ACCA and the career offender provision of the Sentencing Guidelines, we dug ourselves a hole. We have since made that hole a trench by adhering to those decisions without analyzing Florida law. Hopefully one day we will take a fresh look at the issue.